Good morning, your honors. My name is Howard Davis. My name is Howard Davis. I'm representing Artur Karapetyan, the petitioner. There are some overlap issues with the previous case, but one of the wrinkles in this case is that the immigration judge took complete testimony despite the fact that Mr. Karapetyan did not present fingerprints and in fact stated that even though that she's not going to consider, even though she's predominating the asylum, they will take testimony because of the other applications, the other applications being withholding and can't. And again, this is at a period of time before the change of the regulations in January of 05, and in fact the merits was in June of 04. And so even though the government in its briefing stated on page 16 that this is the whole issue of the merits and the burdens of whether he met the burdens as to his claim, it's not an issue. Well, in fact, in this case, the judge did make a decision, which is why I spent the first part of my argument talking about the underlying claim. And I think that the judge, the judge's decision should be reversed. And in fact, at the very end of her decision, the judge found that his testimony was credible despite the fact that she had had certain misgivings. And I cite to page 71. I'm sorry? Certain what? Misgivings. Oh, misgivings. She said that she didn't know what to believe. And that was on page 67 of the record. And then on page 71 at the very end, she said, well, you know, she found him to have applied in a credible manner. But with regard to the whole fingerprints issues, and I guess one of the troubling aspects is the fact of some of the issues that were brought up earlier in that the judge was not required by statute to deny a sign for lack of prints. It just says in the statute in 208 that asylum may not be granted, but didn't say it had to be denied. At the time, there were also no real regulations governing warnings, consequences. These things were, of course, corrected in the regulations that came out in 05, in which the person is not only supposed to receive notice of obligation, but notice of the consequences. Now, another thing is that the judge, in her decision in 64 of the record, said that many times he was giving continuances for purposes of getting fingerprints. But I believe that that misstates the record. And when you look back over the record and go through what was going on at the various hearings, in most of them, no mention was given to fingerprints. If one goes back to the March 19th, 02 master calendar, was the initial master. There was no discussion involving prints. The second one in June of 02, master, involved the filing of supporting documents. There was no discussion of documents or prints. The next one, in February of 03, again, there was no discussion about prints. There was a hearing about the submission of country conditions documents. The only one that really talked about it was the May 8th, 03 merits hearing, and this is on page 91 of the record, where it was set for a merits hearing, and then they could not proceed because the fingerprints were not current. And then the judge tells the attorney that to have the client fingerprinted, and then goes on to explain that we need the prints because, and this is on page 92, we need the prints because it takes some time to process them, and they need it for the next hearing, which was going to be a merits on the asylum in September of 03. But again, there was nothing regarding the consequences. I guess that September 03 hearing must have been continued because the next thing we see on page 98 is an April 04 hearing. The petitioner was not present due to an need for fingerprints, about the fingerprints at all, and then finally the next time is in June 10th, the date of the merits hearing. That's where we get a further discussion about the fingerprints. And even there, it's a rather curious thing because on page 108 of the record, the judge said, well, let's take testimony, and if for any reason it looks like that a And then in her decision on page 64, she revisits the continuance and then says after hearing the Karapetian's claim, he doesn't appear eligible for asylum in any event, and that was based on having heard his claim and whatever her problems with her case. And so for reasons that were having to do with why I think she was wrong on the merits of the case, I mean, it was only for that reason that in the end, she did not continue the case for Prince. So in a certain sense, there's an overlap between her reasoning with regard to why she was denying the case on the merits, as she decided on the merits, and her decision not to continue it further. So that's really pretty much what I wanted to say about the fingerprints issue, if the Court has any other questions related to that. Well, you didn't raise any issue of ineffective assistance by counsel that preceded you, did you? No, I did not. I did do a motion to reconsider, but it was not automatically clear. But, you know, I didn't do a motion to reopen for ineffective assistance. Okay, so on the merits of this case, the I.J. denied your client to be credible? Yes. And that was at the very end. After she denied it, I found it to be on page 71, just before the orders. It says, finally, this Court notes that the respondent has testified in an credible manner. However, the respondent's testimony does not establish that he is a refugee. So the way I read that is that in the end, despite her misgivings, she found him to have testified in a credible manner. And then that forms the basis of the arguments I made on that, the whole requirement for corroborating evidence. And then I had a further discussion on that. Well, part of it was he didn't submit his fingerprints, huh? But that is one reason why she denied. She had denied asylum for two reasons. One is, as she said, she did kind of, well, she's predominating on the fingerprints. But then alternatively, she gave in the alternative why she would have denied asylum. And then she goes into the whole merits thing. But then in the end. Did she say that he failed to submit fingerprints and he failed to show past persecution or fear? Yes, she went into that discussion. She said he was credible. Then the IGA agreed he was detained by the military, beaten by the officers, called derogatory slurs, assigned demeaning tasks because his mother was Russian. And then he participated in a political rally, was detained in isolation, beaten, hospitalized for injuries, warned to leave the country. And then the IJ here never warned Karapetian that his claims could be pretermitted if he failed to submit fingerprints before the merits hearing. Never asked him if he understood the fingerprint requirement. I don't know if his counsel was suspended at that time. Well, this particular attorney has had a history of discipline. This was in around 2000. I think that her earlier discipline was in the 90s. I just kind of looked it up very briefly in CalBAR. But at the time of this hearing, she was not disciplined. Although, as I said, she had had previous instances of discipline in the mid to late 90s. I just wanted to say something about the motion to reconsider unless the court has any. I think you're all right. Okay. So I'll leave. I have about a minute, a little over a minute left. You've got a negative balance.  Yeah. Oh, well. All right. Good morning. Nancy Friedman, further respondent. What's the procedural or legal consequences of the claim being denied on the merits in the alternative pre-admitted because of the failure for fingerprints? I don't quite understand what the consequences are that flow from both of those. Well, I'm not sure I understand your question when you talk about the consequences that flow. Well, on the one hand, she pre-admitted his claim for lack of fingerprints, right? Right. So what does that mean? That means that because the petitioner didn't submit a complete application, they're basically dismissing it. So that's sort of a dismissal. But in the alternative, she denied it on the merits. That's correct, Your Honor. Can you both dismiss and deny? Yes, absolutely. She didn't have to, but as Mr. Davis stated correctly, the immigration judge went ahead and allowed the petitioner to testify as to the merits of his claim, and so it's kind of alternative findings. Okay, so she's denying it, but also pre-admitting it. Well, correct, because he was going ahead on the merits. And if she had found for him on the merits, it seems like she would have given him a continuance. That's what she said. Yes. Well, isn't that what the problem in the last case was? That the lawyer expected that if she was going to grant him on the merits, she'd give a continuance for the fingerprints? But the immigration judge isn't required to do that. The immigration judge, in any case, may or may not grant a continuance. It's not a matter of right. But doesn't that establish that the practice wasn't consistent back then? It is always up to the trial judge, immigration judge, to decide whether or not a continuance is in order. I thought you just argued that they never gave continuances for fingerprints during this time period. No, Your Honor, I did not mean to state that. I don't mean to state they never gave continuances. Obviously, they were given many continuances. If I could just quickly refer to a couple places in the record here, starting at page 91, the May 8, 2003 hearing. Let me go back. So if we were to disagree with the IJ on the merits, then we'd have to reach the issue of whether it should have been pre-dermitted, right? Your question, Your Honor, is whether you... We need to decide both issues. Let me just think through with you for a moment. I'm trying to think through. Okay. Obviously, what I was arguing to this Court is that it's not necessary to reach the question of whether the petitioner met his burden of establishing eligibility for asylum or withholding here because at the outset, he didn't submit a complete application. So that kind of ends the inquiry right there. And if I understand your question correctly, you're asking, well, if you find that the immigration judge abused her discretion in not granting another continuance to allow the petitioner to complete his application and submit the prints, then was there substantial evidence to support the denial of asylum? Is that the question? Well, I'm just wondering whether we need to reach... This case is odd because it seems that part of the reason she denied the continuance was because of her decision on the merits. I don't think so, although the two kind of interrelate. But I think that the immigration judge denied the motion to continue because he didn't have a complete application, as he was required to do. She said, but I'll go ahead and listen to your testimony, and if I find that you establish some eligibility for relief, then I will grant a continuance so you can complete your application. So they're kind of two separate things. So we have to decide both? No, no, not at all, Your Honor, because the first basis of the immigration judge's decision, her denial of the motion to continue, is dispositive. It ends the inquiry because when you don't submit a complete application, your claim is dismissed. That's, as I stated, in the statute, in the regulations, in the asylum application. I'm not sure that I pointed out before this particular section of the regulation, HCFR 1208.10. The title of it is failure to appear in an interview or failure to follow requirements for fingerprint processing. Failure to comply with fingerprint processing requirements without good cause may result in dismissal of the application, and goes on. That's been in the regulations for a long time. Is there any question that we, don't we have to decide both issues? No, Your Honor. Why not? Because the first one disposes of the case. The fact that the immigration... If we decide that against you, then we have to decide the other. If you decide... And if we decide against you on the second one, we have to decide the first one. So if we decide against you on either one, we have to decide both issues. Let me just make sure before I answer that I'm on the right track. If you decide the immigration judge abused her discretion in not continuing the hearing, then the court would remand it. But it need not do that, of course, because the immigration judge continued it numerous times over two years. The immigration judge... It's not the question of whether she abused her discretion in pretermitting the case because of the fingerprint lack. Because she denied the motion to continue. If we decide that against you, the case should go on, and then we have to decide the other issue. Yes, I agree with your statement. If we decide the other issue against you, that means she's eligible for asylum, then we have to go back and decide the fingerprint issue. Decide the fingerprint issue? I'm not sure how the court could decide the fingerprint issue, per se, because... Because she pretermitted the case on the fingerprint issue. Because she didn't get fingerprints, so you have to do that. No, throughout the case. Yes. On the fingerprint issue. That's right. So we have to decide whether she was right on that if we find that she should be eligible for asylum. But again, Your Honor, what I'm trying to focus on is what the immigration judge actually did, and that was deny the motion to continue the hearing because it had been going on over two years. The petitioner didn't even show up at a hearing and got a continuance. The petitioner even admitted he was arrested and stated he was convicted at LAX. Can I ask a side question? It's kind of curious to me because I've been on this court ten years now and have done thousands and thousands and thousands of these cases. Likewise, Your Honor. This is the first time the fingerprint issues, I've heard of the fingerprint issue, is this week, this calendar. I haven't had a fingerprint case before. I'm sorry, Your Honor, but I believe the court has decided a number of them in unpublished decisions. Yes. And I looked up all the unpublished cases and, in fact, Your Honor, heard one that was decided. I'm sorry, there was an argument, I don't believe, but a number of them have been summarily dismissed without argument last year. I'm on motions. I'm probably on motions and screening weeks. This is the first time I've had oral argument on these cases. Okay. So I'm just curious why suddenly now we've reached a point where you might need a published opinion on the state of this law. I was going to ask the court the same question, Your Honor, because we brief numerous, numerous cases in our office that are very, very similar to both the ones that were before the court today. And I myself was curious as to, you know, why the court was interested in hearing argument on it. I think it's probably the fingerprint issue and then the corroboration requirement when there's an express credibility factor are probably the two issues that are of importance in this case. Well, I will submit unless the court has further questions. Fingerprint, they were coming up 400. Well, as I said, Your Honor, I don't recall seeing your name on some of the unpublished cases, but there are quite a number of them where this court has just – Both ways, huh? That's probably what's going on. I did not find any case in my numerous searches on Westlaw that the court found in favor of the petitioner when it was simply they didn't submit fingerprints after numerous continuances. And I think that, you know, legal research will corroborate my statement. So unless the court has other questions. Thank you, Your Honor. Let me just clear this up in your mind. But my understanding is I have to look for the piece of paper here. Let me see. Okay. So it says here we get a piece of paper called an inventory sheet on each case. And each case, when it's filed, is inventory. And we assign issues. So we keep similar issues together. So when the cases go out for merits hearing. So it says here, this case is being assigned to a merits panel because there are no published Ninth Circuit decisions addressing the fingerprint requirement. Fingerprinting requirement. Fingerprint issues also pending in Scharifti v. Gonzalez, 206. They give us the numbers. Cui v. McCoskey, that's the other one. Carpathian v. McCoskey. And here's the numbers. And many other NYC cases. A published decision would be helpful. It says, note this court's recent decisions concerning authentication of documents. They sought Fathian and an establishment of identity. Kalunuma v. Gonzalez. So that's a mystery. Yes, Judge, I agree. They're sometimes more enlightening than the Justice Department. Thank you, Your Honor. Okay. Thank you very much. Okay. It's been a long morning, unless you have something really important. Okay, just as far as clarifying this, what it was that was predetermined was the asylum. His smile will get you a long distance. It was the asylum, not the withholding. And the withholding and the cap were not predetermined for the prince. I just wanted to say that. We know that. Okay, that's fine. All right. All right. Thank you, Your Honor. Okay, thank you.
judges: Pregerson, Wardlaw, Archer